## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MELISSA STEWART, | : | Case No. 3:11-cv-178 |
| Plaintiff, | : | District Judge Walter H. Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

___

### REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED
___

This is a Social Security disability appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Melissa Stewart ("Plaintiff") "not disabled" and therefore unentitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB").  *See* doc. 7-2 at PageID 52.[2]

As an initial matter, the Court notes that Plaintiff has brought this action *pro se*.[3] As such, the Court holds Plaintiff's pleadings to less stringent standards than formal pleadings drafted by lawyers, and the Court will liberally construe those pleadings as well as Plaintiff's arguments.  *See Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 510 (6th Cir. 2011).

___

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereinafter, citations to the administrative record will only reference the PageID.

[3] The Court further notes that Plaintiff was represented by counsel at the administrative hearing, and in her appeal to the Appeals Council.  PageID 46, 80-106.

This case is before the Court upon Plaintiff's Statement of Errors (doc. 11), the Commissioner's Memorandum in Opposition (doc. 15), the administrative record (doc. 7), and the record as a whole.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed her applications for DIB and SSI in December 2007, asserting that she has been under a "disability" since October 1, 2007.[4] *See* PageID 179-81, 182-88. Plaintiff claims she is disabled due to chronic obstructive pulmonary disease ("COPD"), asthma, a heart condition, high blood pressure, arthritis, obsessive compulsive disorder, manic-depression (*i.e.* bipolar disorder), anxiety and hypertension. PageID 86, 257.

Following initial administrative denials of her applications, Plaintiff received a hearing before ALJ David Redmond on April 6, 2010. PageID 80-106. On August 20, 2010, the ALJ issued a written decision, which found that Plaintiff could perform a limited range of light work and was thus "not disabled." PageID 50-61.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since October 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: 1) a history of cardiac arrhythmias; 2) COPD; 3) asthma; 4) morbid obesity; 5) major depressive disorder; and 6) anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

---

[4]The record reveals that Plaintiff has unsuccessfully applied for disability in 1997, 2003, and 2006. PageID 170-78.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She is limited to 1) a maximum lifting of 10 pounds; 2) the option to alternate sitting and standing with 15 minutes off her feet in each hour of work; 3) a temperature-controlled environment; and 4) simple tasks featuring minimal personal contacts and no production quotas. By definition, light work ordinarily requires the capacity to lift 10 pounds frequently and 20 pounds occasionally, and to engage in a good deal of sitting, standing, or walking.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 2, 1967, and was 39 years old, defining her as a younger individual on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 53-60.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 33-35. *See Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff timely filed this appeal on May 25, 2011. Doc. 2.

### B. Plaintiff's Hearing Testimony

At the administrative hearing, Plaintiff testified that she is 5'7" tall, and weighs approximately 340 pounds. PageID 83. Plaintiff testified that she cannot work due to manic-depression, anxiety, difficulty concentrating, a heart condition, asthma, COPD, and chronic back and knee pain. PageID 86.

Plaintiff lives with her parents and her uncle. PageID 84. She has a driver's license, but no longer drives because of panic attacks. *Id*. Plaintiff testified that she left her last job as a lab technician at the Dayton Blood Bank because she was starting to have problems "with keeping her work the way it's supposed to be." PageID 85. She further testified that she was making a lot of mistakes and experienced a number of manic episodes. *Id*. Plaintiff stated, "I was having problems getting along with the other employees and was asked to resign. I kind of resigned for health reasons." *Id.*

Plaintiff testified that she could likely walk for up to 20 minutes at a time, sit for up to two hours at a time, and lift up to 10 pounds. PageID 87-88. She takes heart medication, but it causes her to feel drowsy and light-headed. PageID 86-87. She has pain in her back and legs, and numbness in her legs. PageID 87. At home, she helps out with the laundry and cooking, but otherwise does no chores. PageID 88. Plaintiff stated that she has no hobbies, but talks to friends on the phone. *Id.* During a typical day, she gets up from bed between 1:00 p.m. and 2:00 p.m., attends to her dog, drinks coffee, and takes her medication. PageID 89. Plaintiff testified

that she spends time on the computer, checks her e-mail, and watches television. *Id*. On most days, Plaintiff stays in her pajamas because she is depressed. *Id*. She smokes approximately one pack of cigarettes per day. PageID 89. She reports using nicotine patches in an attempt to quit smoking. *Id*.

When examined by her counsel of record at the time, Plaintiff testified that she spent six months working part-time at a pizza restaurant after she quit working full-time. PageID 90. However, she stopped working at the pizza restaurant due to confrontational problems with the owner. PageID 90-91. Plaintiff reported that she has been "let go" or fired from anywhere between fifteen and twenty jobs due to asthma or "confrontational reasons." PageID 91. Plaintiff started mental health treatment in July 2007 because of her short temper and problems with concentration. PageID 91-92. She recalls having manic episodes "for as long as [she] can remember." PageID 92. Plaintiff's manic episodes only occur approximately once every six months. *Id.* She reports being "pretty even" when taking the medication Depakote, but claims that she feels depressed instead of manic. PageID 92-93.

Plaintiff further testified that she has gained 100 pounds in the past year, and her therapist took her off Paxil because of the weight gain. PageID 93. She stated that her psychological difficulties, both manic and depressive, have become worse over time. PageID 95. She also testified that her heart condition is controlled "in most cases," but she has episodes of atrial fibrillation and tachycardia (*i.e.* rapid heart-beat) about once every one-to-two months. PageID 95-96.

### C. Vocational Expert Testimony

Suman Srinivasan, a vocational expert ("VE"), testified at the hearing that based on Plaintiff's RFC, age, education, and work experience, Plaintiff would be unable to perform her

past relevant work, but would be able to perform the requirements of 8,000 unskilled light jobs, such as mail sorter and photocopy machine operator, and 2,500 unskilled sedentary jobs, such as addresser and true copy examiner.  PageID 102-03.

## II.   APPLICABLE LAW

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Narrowed to its

6

statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.   OPINION AND ANALYSIS

As a preliminary note, the administrative record contains many medical records, an opinion from a treating therapist, numerous opinions from state agency consultative examiners,

and opinions of non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record, and because the Commissioner has accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence.  *See* doc. 15 at PageID 643-49 (and records cited therein).  Where applicable, the Court will identify the medical evidence relevant to its decision.

Liberally construed, Plaintiff's Statement of Specific Errors challenges the ALJ's finding of non-disability on the grounds that: 1) her physical impairments meet Listings 3.03 (asthma) and 4.00 (cardiovascular), and her mental impairments meet Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders); 2) the ALJ should have given more weight to the opinion of Meg Metts, Ph.D.,[5] a psychologist who conducted a consultative exam at the request of the state agency; and 3) the ALJ should have found the diagnosis of agoraphobia to be a severe impairment.  *See* doc. 11 at PageID 633.  The Court has carefully reviewed the ALJ's decision to determine whether the critical findings of fact were made in compliance with the applicable law and whether substantial evidence supports those findings.  After a careful review of the record, the Court finds that the decision of the ALJ is supported by substantial evidence, and recommends, for the reasons that follow, that the ALJ's non-disability determination be affirmed.

  **A.**   **Listings 3.03 and 4.00**

The Sixth Circuit has long held "the burden of proof lies with the claimant at steps one through four of the [sequential disability benefits analysis]," including proving presumptive disability by meeting or exceeding a Medical Listing at step three.  *Her v. Comm'r of Soc. Sec.,*

---

[5]In the ALJ's decision, he erroneously refers to Dr. Metts as "Dr. Motts."  Cf. PageID 50-61; 506-12.

8

203 F.3d 388, 391 (6th Cir. 1999). Thus, if Plaintiff "can show an impairment is listed in [20 C.F.R. part 404, subpart P] Appendix 1 ('the [L]istings'), or is equal to a listed impairment, the ALJ must find the claimant disabled." *Buress v. Sec'y of H.H.S.*, 835 F.2d 139, 140 (6th Cir. 1987). In order for Plaintiff "to qualify as disabled under a listed impairment, [she] must meet all the requirements specified in the Listing." *Id.* As the Commissioner notes, this must be done by presenting specific medical findings that satisfy the particular Listing. *See Sullivan v. Zebley,* 493 U.S. 521, 530-32 (1990). An impairment that manifests only some of the criteria in a particular Listing, "no matter how severely, does not qualify." *Id.* at 530.

Plaintiff argues that her condition meets the requirements of Listing 3.03A of Appendix 1, which refers to chronic asthmatic bronchitis resulting in the type of chronic obstructive ventilatory impairment that is described in Listing 3.02A (COPD). *See* doc. 11. The ALJ reasonably found that "[Plaintiff's] asthma/COPD appears to be mild from an objective standpoint, and the record does not document a frequent need for aggressive medical intervention for exacerbations of her respiratory condition." PageID 55. The ALJ also cited Plaintiff's chronic smoking habit, which Plaintiff reports is one pack per day. *See* PageID 89, 514.

In addition, Plaintiff argues that her cardiac condition meets the requirements of Listing 4.00. Here, the ALJ again reasonably found that "[Plaintiff's] cardiac arrhythmia responded to medical care, and diagnostic tests and clinical evaluations have indicated a relatively stable cardiovascular status." PageID 55.

In his decision, the ALJ details a lengthy review of Plaintiff's medical history, describing her impairments and summarizing her treatment history. For example, in April 2006 -- six months prior to the alleged onset date of October 10, 2006 -- Plaintiff was admitted to the hospital because she was experiencing atrial fibrillation. PageID 339-56. Following Plaintiff's

9

hospitalization, Dr. Ahmed, a cardiologist, placed her on Lopressor and Coumadin and noted that she showed improvement within a few months. PageID 357-98. In June 2006, a heart monitor demonstrated some continued arrhythmia, but a stress test was negative of ischemia. PageID 371. Echocardiograms in 2006 and 2007 revealed normal left ventricular function. PageID 370, 458. Records dating from 2006 from Dr. Rodney, a family physician, show that Plaintiff was seen for asthma, but she continued to smoke heavily against her physicians' advice. PageID 399-416. In 2007, a chest x-ray taken during an emergency room visit was consistent with mild COPD. PageID 492. Also in 2007, Plaintiff had a normal heart function and her ejection fraction was 60%.[6] PageID 458. In January 2008, Plaintiff had a two-day hospital stay for treatment of an exacerbation of COPD. PageID 581-86. She exhibited some wheezing, but antibiotics were not prescribed because she did not appear toxic and because she had a "normal white count." *Id*.

Plaintiff identifies no test results which show enduring low blood oxygen saturation levels; no x-rays, MRIs or scans; and no other objective measures indicative of severely impaired cardiac or respiratory functioning. Plaintiff points to no treating physician opinions in the record which set forth limitations inconsistent with those found by the ALJ. As such, Plaintiff has not met her burden to prove that either Listing has been met. *See Arnold*, 2000 U.S. App. LEXIS 33990, at *2. In addition, any claim of disability due to COPD or asthma is undermined by Plaintiff's smoking. *See Sias v. Sec'y of H.H.S.*, 861 F.2d 475, 480 (6th Cir. 1988). Based upon the foregoing, the Court finds the ALJ's analysis regarding Listings 3.03 and 4.00 is supported by substantial evidence, and Plaintiff's assignment of error as to these Listings is without merit.

---

[6]A normal ejection fraction is greater than 55%, and an ejection fraction of below 30%, when accompanied by other symptoms, qualifies as a presumptive disability under the Act. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02B (2005); *Diamond v. Comm'r of Soc. Sec.*, 154 F.App'x 478, 480 (6th Cir. 2005).

*See Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts").

### B. Listings 12.04 and 12.06

Plaintiff argues that the ALJ erred in failing to find that she met or equaled Listings 12.04 and 12.06. However, for the reasons stated below, the Court finds ALJ's analysis to be supported by substantial evidence.

In evaluating psychiatric impairments, the Commissioner's regulations provide that the ALJ should consider such factors as the claimant's ability to: understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. § 404.1521(b). Disability is to be sequentially evaluated. The signs and symptoms which would support a determination -- on the basis of the psychiatric evidence alone without reference to the claimant's age, education, and work experience -- that she suffers from a totally disabling psychiatric impairment are set out in §§12.01 through 12.09, Subpart P, Appendix 1, Listing of Impairments. The presence or absence of these and similar signs and symptoms is controlling, while an individual physician's opinion on the ultimate issue of disability is not. 20 C.F.R. §§ 404.1513(b), (c), (d), 404.1526(b), and 404.1527.

The Commissioner has adopted a special procedure for evaluating mental impairments. 20 C.F.R. § 404.1520a. The ALJ must fill out a detailed Psychiatric Review Technique Form to assist him or her in evaluating each factor of the appropriate psychiatric Listing(s), 20 C.F.R. §404.1520a(d), and must attempt to "rate the degree of functional loss resulting from the impairment(s)." 20 C.F.R. §404.1520a(b)(3). Then, the ALJ must determine whether the

impairment is severe, 20 C.F.R. §404.1520a(c)(1), and, if so, must determine whether the impairment meets or equals a Listing. 20 C.F.R. §404.1520a(c)(2).

If the ALJ determines that the claimant does not meet or equal one of the psychiatric Listings, he must determine whether the psychiatric impairment, considering the claimant's age, education, and prior work experience, nonetheless renders plaintiff disabled. 20 C.F.R. §404.1520a(c)(3). In making this decision, the ALJ must consider the same types of evidence used to determine whether the claimant's impairment meets or equals the Listings. *See* Social Security Ruling 85-16, CCH Unemployment Insurance Reporter ¶16,086.

Listing 12.04 requires that an individual satisfy either the criteria in subparts A and B, or subparts A and C of the Listing. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. There is no dispute that Plaintiff satisfied the "A" criteria for Listing 12.04. Subpart B requires at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. Subpart C can be satisfied by establishing repeated episodes of decompensation over an extended period of time. *Id*.

Listing 12.06, relating to anxiety-related disorders, similarly requires that subparts A and B, or subparts A and C of the Listing are met. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06. There is no dispute that Plaintiff satisfied the "A" criteria for Listing 12.06, which has the same subpart B criteria as Listing 12.04.

The objective evidence of record supports the ALJ's finding that Plaintiff's major depressive disorder and anxiety disorder are both severe impairments. Substantial evidence also

supports the ALJ's finding that Plaintiff did not meet or equal the "B" criteria of either Listing 12.04 or 12.06. PageID 55-56.

The Court agrees with the ALJ's finding that the record demonstrates Plaintiff experiences few restrictions in her activities of daily living. Plaintiff reports that during a typical day, she prepares and eats meals, cleans and performs other household chores, and watches television.[7] PageID 229; 420; 468; 508. She is also able to sweep, dust, do dishes and laundry, as well as take care of her dogs. PageID 229, 231. Plaintiff reported no difficulties managing her grooming or personal hygiene. PageID 230, 509. She has a driver's license, goes shopping for groceries and pet supplies once or twice a week, and talks on the phone with friends. PageID 231-32. Accordingly, the ALJ's finding -- that Plaintiff's activities of daily living are only mildly impaired -- is supported by substantial evidence. PageID 55.

Substantial evidence also supports the ALJ's finding that Plaintiff's social functioning and ability to maintain concentration, persistence, or pace are both moderately impaired -- not markedly impaired. PageID 55-56. Dr. Metts estimated a moderate-to-severe degree of impairment in two functional areas, but assigned Plaintiff a GAF functional severity score of 55.[8]

---

[7] There are several notes in the record indicating Plaintiff worked part-time at a restaurant since her alleged onset date. *See* PageID 229; 420; 468; 508. Although it does not appear that ALJ used Plaintiff's part-time work as a basis for his non-disability finding, the Court nevertheless notes that "[p]art-time work may constitute substantial gainful activity that precludes a claim for disability benefits." *McKenzie v. Chater*, No. 94-6448, 1996 U.S. App. LEXIS 1442, *7 (6th Cir. Jan. 2, 1996) (citing *Davis v. Sec'y of H.H.S.*, 915 F.2d 186, 189 (6th Cir. 1990)).

[8] "GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r*, 61 F.App'x 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF of 51-60 indicates "moderate symptoms OR any moderate difficulty in social, occupational, or school functioning." *Id.*; *accord Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997) ("moderate difficulty" does not rise to the level of disability).

PageID 511-12. When Dr. Schulz consultatively examined Plaintiff in January 2007, he assigned a GAF score of 58, and found her to be only "minimally to mildly impaired" in her ability to maintain attention, concentration, and pace, as well as her ability to relate to others.  PageID 422. In August 2007, counseling records noted a GAF score of 62, which is indicative of mild symptoms.[9]  PageID 474.  In April 2008, Cynthia Waggoner, Psy.D. completed a Mental RFC Assessment at the request of the state agency and found Plaintiff's ability to maintain concentration, persistence, or pace to be moderately limited, and her social interaction abilities to be mildly or moderately limited.  PageID 523-24.  In July 2008, Richard Lyon, Ph.D. completed a Mental RFC Assessment and also found Plaintiff to be mildly and moderately limited in the same areas as Dr. Waggoner.  PageID 552-53.

In addition, although Plaintiff's testimony does suggest an inactive, reclusive lifestyle, counseling records note her interest in art, and Dr. Metts noted her interest in reading and collecting rocks.  PageID 55-56; 508.  Plaintiff has been found to be able to maintain satisfactory attention and concentration during interviews, and able to understand and follow directions. PageID 461, 463, 464, 465, 466, 472-73, 509-10.   The ALJ's finding -- that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace -- is supported by substantial evidence of record, as is his finding that Plaintiff's social functioning is only moderately impaired.  Furthermore, the ALJ reasonably determined that there is no evidence in the record that Plaintiff experienced episodes of decompensation, and Plaintiff points to no

---

[9]A GAF score of 61-70 indicate some mild symptoms (i.e., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (i.e., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *See* DSM-IV-TR at 33-34.

14

evidence in the record to support a claim that she has experienced any episodes of decompensation. PageID 56.

Therefore, because Plaintiff's mental impairments do include at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "B" criteria are not satisfied for either Listing. PageID 55-56. Accordingly, because all of the requirements for Listings 12.04 and 12.06 were not met or equaled, *see Sullivan*, 493 U.S. at 530-32, the ALJ's finding -- that Plaintiff met neither Listing-- is supported by substantial evidence.

### C. Dr. Metts' Opinion

Plaintiff argues that the ALJ erred by rejecting Dr. Metts' determination that she was moderately-to-severely impaired in her mental ability to withstand the stress and pressures of day-to-day work. Doc. 11. In support of her argument, Plaintiff points to Dr. Metts' assignment of a GAF symptom score of 50.[10]

"Discretion is vested in the ALJ to weigh all the evidence." *Collins v. Comm'r of Soc. Sec.*, 357 F.App'x 663, 668 (6th Cir. 2009). Social Security matters often involve conflicting medical evidence, and the ALJ is vested with the duty to resolve questions of fact. *Mullins v. Sec'y of H.H.S.,* 836 F.2d 980 (6th Cir. 1987).

Dr. Metts conducted a consultative examination at the request of the state agency; she is not a treating physician. Accordingly, Dr. Metts' opinion is not entitled to controlling weight. *Cf. Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). Contrary to Plaintiff's argument, the ALJ did not simply reject Dr. Metts' opinion or give the inappropriate evidentiary

---

[10] A GAF score of 41-50 indicates "serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." DSM-IV-TR at 34.

weight to the opinion. PageID 55-56. Rather, the ALJ considered Dr. Metts' opinion along with the other mental health evidence of record, and made a determination that Plaintiff should be limited to simple tasks, minimal personal contacts, and no production quotas. PageID 56. The ALJ's conclusion is supported by the opinions of Drs. Waggoner, Lyon, and Schultz – all of whom found Plaintiff to be mildly or moderately limited at most. PageID 417-24, 523-26, 527-40, 552-55, 556-69. Without question, the amount of weight the ALJ ultimately accorded Dr. Metts' opinion is well within the permissible "zone of choice" that the Sixth Circuit discussed in *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). Accordingly, the Court finds Plaintiff's assignment of error is without merit.

### D.  New Diagnosis of Agoraphobia

Plaintiff's final statement of error states "Per claimant since her last appointment with Mark Schweikert her therapist she has an additional diagnosis of Agoraphobia." PageID 633. Liberally construed, the Court perceives Plaintiff's assignment of error to be seeking a remand under sentence six of 42 U.S.C. § 405(g), which addresses situations where a claimant submits new evidence that was not presented to the ALJ but would alter the ALJ's ultimate decision. Sentence six of § 405(g) provides, in relevant part:

> The court…may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both [.]

42 U.S.C. § 405(g). "[E]vidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is "material" if

it "would likely change the Commissioner's decision." *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). In order to prove "good cause," a Claimant must "demonstrat[e] a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. This includes detailing the obstacles that prevented the admission of the evidence. *Bass*, 499 F.3d at 513. The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the "good cause" requirement. The Court takes "a harder line on the good cause test" with respect to timing and thus requires that the claimant "give a valid reason for his failure to obtain evidence prior to the hearing." *Oliver v. Sec'y of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986). When the Court grants a sentence-six motion for remand, it neither affirms nor reverses the ALJ's decision, but simply remands for further fact-finding. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

Other than Plaintiff's aforementioned statement of a purported diagnosis of agoraphobia, the record is void of any reference to agoraphobia. Plaintiff made no mention of agoraphobia in her testimony, and the ALJ did not address agoraphobia in his decision. Assuming, then, that a therapist diagnosed Plaintiff with agoraphobia at some point after the ALJ's decision was issued on August 20, 2010 and before Plaintiff's Statement of Errors was filed on October 13, 2011, Plaintiff nevertheless has not met her burden of showing that the evidence is "material," or her burden of showing "good cause" for failing to obtain the evidence prior to the hearing. *See Bass*, 499 F.3d at 513; *Foster*, 279 F.3d at 357.

Plaintiff's statement is supported by no documentation or evidence of the therapist's qualifications, treatment records, or even the diagnosis itself. *See* PageID 633. Thus, the only evidence before the Court is Plaintiff's statement in her Statement of Errors that she was diagnosed with agoraphobia by a therapist. Plaintiff's lack of evidentiary support is problematic

for a number of reasons. For instance, if Schweikert is a therapist and not a psychologist or psychiatrist, he may not qualify as a "treating source" as defined by 20 C.F.R. §§ 404.1502 and 416.902, and thus his opinion may not be entitled to controlling weight. Furthermore, the mere diagnosis of an impairment does not render an individual disabled; nor does it reveal anything about the limitations, if any, the impairment imposes upon an individual. *See Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988). The evidence in the record does not support Plaintiff's contention that she would have been found disabled had the ALJ included agoraphobia as a severe impairment, and accordingly, it cannot be deemed "material." *See Bass*, 499 F.3d at 513.

Moreover, Plaintiff's cursory statement about her therapist's new diagnosis makes no explanation as to why it was not available at the time of the hearing. "[T]iming alone does not satisfy the 'good cause' requirement." *Courter v. Comm'r of Soc. Sec.*, No. 10-6119, 2012 U.S. App. LEXIS 9372, at *34 (6th Cir. May 7, 2012). Plaintiff fails to provide a reasoned explanation for, or detail, the obstacles that allegedly hindered her from seeking the evaluation sooner. *See Bass*, 499 F.3d at 513. Because Plaintiff cannot show materiality or good cause for her failure to obtain her therapist's opinion prior to the ALJ's decision, Plaintiff is not entitled to a sentence six remand. *See Courter*, 2012 U.S. App. LEXIS 9372, at *35.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignments of error to be unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's final non-disability finding be found supported by substantial evidence, and **AFFIRMED**;

2. Plaintiff's request for a remand under sentence six of 42 U.S.C. § 405(g) be **DENIED**; and

3. This case be **CLOSED**.

August 3, 2012                                              s/ **Michael J. Newman**
                                                            United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report & Recommendation objected to and shall be accompanied by a memorandum in support of the objections.  If the Report & Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).